THEODORE W. KHEEL, Respondent, v RICHARD RAVITCH et al., Appellants.

First Department, May 5, 1983

APPEARANCES OF COUNSEL

*Mary P. Bass* (*Lester G. Freundlich* of counsel), for appellants.

*Raymond F. Gregory* (*Theodore W. Kheel* of counsel), for respondent.

**OPINION OF THE COURT**

KASSAL, J.

Petitioner brought this proceeding pursuant to CPLR article 78 to compel production by respondents, pursuant to

the Freedom of Information Law (Public Officers Law, § 84 *et seq.*) of a memorandum prepared by the staff of the Transit Authority. This document relates to petitioner's performance as the designated arbitrator under the collective bargaining agreements between the transit unions and the Transit Authority and Manhattan and Bronx Surface Transit Operating Authority, both divisions of the Metropolitan Transportation Authority (MTA). The memorandum, which MTA concedes contained an analysis of arbitration awards by Mr. Kheel, included a recommendation that the interests of the MTA would best be served by the designation of a new arbitrator for the contract period following expiration of the existing collective bargaining agreement on March 31, 1982. Petitioner also sought disclosure of a copy of the decision of the MTA board not to redesignate him as the impartial arbitrator, as well as the names of the board members who had voted and the manner by which each vote was cast.

The primary issue in the case, both before Special Term and on this appeal, is whether the documents sought are subject to public disclosure under the Freedom of Information Law or are exempt thereunder on the alternate grounds urged by appellants, that (1) production would impair collective bargaining negotiations or (2) that the documents are exempt from disclosure as intra-agency material (Public Officers Law, § 87, subd 2, pars [c], [g]).

For the past 33 years, since 1949, petitioner served as a well-known and highly respected labor mediator in the transit industry. At the time the then existing collective bargaining agreement between the Transit Authority and the unions expired, on March 31, 1982, Mr. Kheel was the designated impartial arbitrator.

On April 5, 1982, the *New York Times* reported: "Kheel, Facing Ouster, Steps Down As New York's Transit Arbitrator". According to the news story, MTA Chairman Richard Ravitch sought to change the designated arbitrator after concluding that petitioner's recent decisions were "unfavorable to management and favorable to the union." The report made specific reference to the disclosure by Ravitch of the existence of a memorandum which documented the "unfavorable rulings" by Kheel and that there

were "strong feelings" within the MTA board that petitioner should be replaced.

According to petitioner, days prior to publication of the newspaper account, he had learned of a move to displace him as the designated arbitrator and, on April 4, 1982, he announced that, as a result of his belief that an arbitrator, to be effective, must be acceptable to both sides, he would not accept reappointment as the impartial arbitrator.

On April 6, 1982, pursuant to the Freedom of Information Law (Public Officers Law, § 87), petitioner demanded production of the memorandum referred to in the news story, together with a copy of the board decision, the names of the board members who had voted and the manner by which each had voted. The letter requesting this information expressed the view that Ravitch's plan to oust petitioner would be highly damaging to Kheel's professional career as an arbitrator and would have an adverse effect upon his reputation for fairness and impartiality. This letter concluded that disclosure was necessary to determine whether the MTA or the Mayor, or both, acted arbitrarily or capriciously in reaching the determination that petitioner be replaced.

On April 27, 1982, four days after management and transit union leaders had announced the appointment of a new arbitrator, petitioner's request for this disclosure was denied by MTA's general counsel upon the grounds: (1) production "would impair collective bargaining negotiations" and (2) the document constituted "inter or intra-agency material which does not constitute statistical or factual data, instructions to staff, or a final agency policy or determination." (Public Officers Law, § 87, subd 2, pars [c], [g].) While appellants refused to produce the requested memorandum, they furnished petitioner with portions of the transcript of the press conference held by Ravitch on April 23, 1982, where the MTA Chairman stated: "The decision to replace Ted [Kheel] which was made at my instance, not at the unions [sic], was not made because I thought poorly of his ability integrity or impartiality at all. Rather the fundamental view that I thought it was time for a change..and given the fact that we are seeking major changes in the contract for all the circumstances previ-

ously described. But it is clearly, this decision was no reflection on Mr. Kheel's (as I said) ability, integrity or impartiality."

Thereupon, this proceeding was brought to judicially enforce petitioner's claimed right to disclosure of the memorandum and the determination of the board. In opposing the application, appellants contended that the memorandum did not constitute final agency policy but, instead, amounted to an analysis of Mr. Kheel's performance made by Transit Authority staff, including a short discussion of a proposed arbitration clause for the new collective bargaining agreement and the writer's view as to how petitioner would apply that cause. It was concluded that the interests of the MTA would be better served by reaching an agreement with the transit unions to select a different arbitrator. It was further stated that the memorandum was not circulated among the members of the board, who did not vote on any matter relating to the negotiation. Further, it was alleged that no decision was ever made by the board with respect to ousting petitioner, nor was any board action required. The determination was not intended, in any way, to reflect upon his competence or ability, from which both union and management had benefited over the years. According to appellants, the four-page memorandum, dated March 18, 1982, did not amount to final agency action; was prepared prior to reaching a decision to replace petitioner; and was but one of many factors taken into account by Ravitch in assessing the MTA's collective bargaining posture in terms of the designation of an impartial arbitrator for the next ensuing period.

Disputing the claim, Kheel contended that the memorandum was not a predecision document but actually was prepared after the decision to replace him had been made and was used as postdecisional support for the reason given by the MTA in opposing his redesignation.

Special Term directed production, finding that the agency had not satisfied its burden to demonstrate that the requested material was exempt from disclosure (115 Misc 2d 602). In rejecting the claim that production would impair collective bargaining negotiations (Public Officers Law, § 87, subd 2, par [c]), the court relied upon the

absence of any showing of present or imminent collective bargaining negotiations which might be affected by the release of information which had already been placed in the public arena by the comments made by the MTA Chairman. In finding inapplicable the exemption for intra-agency material (Public Officers Law, § 87, subd 2, par [g]), the court held that the memorandum reflected final agency policy formulated by the MTA. In light of the claim that there had been no formal MTA board determination as to petitioner's status, the court, finding that other records might exist, directed the MTA to specify those documents in existence with regard to the determination upon which disclosure had been sought, and granted petitioner leave to thereafter pursue available remedies to obtain access to such additional documents, including an application to reopen the proceeding after exhaustion of administrative remedies.

The Freedom of Information Law (Public Officers Law, § 84 *et seq.*) effectively strikes a balance between the inherent right of the public to know and the legitimate interest on the part of government to keep certain matters confidential. The legislation establishes a general policy which favors disclosure, subject to eight narrowly drafted exemptions, with the burden cast upon the agency to sufficiently demonstrate that the requested material is exempt. (*Matter of Fink v Lefkowitz,* 47 NY2d 567; *Matter of Westchester Rockland Newspapers v Kimball,* 50 NY2d 575.) Instructive is the observation by Chief Judge COOKE, writing for a unanimous Court of Appeals in *Matter of Fink v Lefkowitz* (47 NY2d, at p 571): "To be sure, the balance is presumptively struck in favor of disclosure, but in eight specific, narrowly constructed instances where the governmental agency convincingly demonstrates its need, disclosure will not be ordered (Public Officers Law, § 87, subd 2). Thus, the agency does not have carte blanche to withhold any information it pleases. Rather it is required to articulate particularized and specific justification and, if necessary, submit the requested materials to the court for *in camera* inspection, to exempt its records from disclosure (see *Church of Scientology of N. Y. v State of New York,* 46 NY2d 906, 908). Only where the material requested falls squarely

within the ambit of one of these statutory exemptions may disclosure be withheld."

■ In this case, we cannot perceive the underlying rationale of Special Term's conclusion without the benefit of an *in camera* inspection, that the memorandum amounted to "final agency policy formulated by the MTA." Such an inspection is critical in the court's evaluation of the nature and scope of the request in relation to the governmental interest, which is narrowly circumscribed. Upon our review of the memorandum, *in camera,* we are in agreement that the document is purely an intra-agency memorandum and is not a final agency determination. Plainly, it is a predecisional memorandum, prepared in furtherance of the decisional process. Accordingly, it is exempt from disclosure under section 87 (subd 2, par [g]) of the Public Officers Law, which permits an agency to deny access to records that:

"(g) are inter-agency or intra-agency materials which are not:

"i. statistical or factual tabulations or data;

"ii. instructions to staff that affect the public; or

"iii. final agency policy or determinations".

Under the Federal Freedom of Information Act (US Code, tit 5, § 552), upon which the State law is modeled, it has been held that the exemption for interagency or intra-agency memoranda (US Code, tit 5, § 552, subd [b], par [5]) authorizes the withholding from the public of predecisional memoranda prepared to assist the agency in the decision-making process (*National Labor Relations Bd. v Sears, Roebuck & Co.,* 421 US 132; *Renegotiation Bd. v Grumman Aircraft,* 421 US 168). The Supreme Court there distinguished between predecisional memorandum (prepared in order to assist an agency decision maker in arriving at a decision) and postdecisional memoranda (setting forth the reasons for an agency decision already made), concluding that, under the Federal statute, only the former was exempt from disclosure (421 US, at p 184). Such predecisional memoranda or reports provide necessary advice and recommendations to aid the agency in carrying out its functions. They are not final opinions and are prepared to aid in

discussion before any final determination is reached. Accordingly, public disclosure could well impinge upon the deliberative process. However, postdecisional memoranda and reports effectively explain the basis for agency policy and action and, thus, are of vital concern to the public. Such communications satisfy the public interest by disclosing the basis for agency policy which has been adopted. As the Supreme Court concluded in *National Labor Relations Bd. v Sears, Roebuck & Co.* (421 US, at pp 152-153): "These reasons, if expressed within the agency, constitute the 'working law' of the agency * * * outside the protection of Exemption 5."

The decisions construing New York's Freedom of Information Law are in accord. They have similarly held that predecisional memoranda, prepared to assist the agency in its decision-making process and which are not final agency determinations or policy, are exempt from disclosure. (*Matter of McAulay v Board of Educ.*, 61 AD2d 1048, affd 48 NY2d 659; *Matter of Marshall v State Bd. for Professional Med. Conduct,* 73 AD2d 798, mot for lv to app den 49 NY2d 709; *Sinicropi v County of Nassau,* 76 AD2d 832; *Matter of Sea Crest Constr. Corp. v Stubing,* 82 AD2d 546.) On this basis, the Appellate Division, Second Department, in *McAulay,* denied access to documents prepared by or for a hearing panel which was to evaluate petitioner's performance as a teacher. In denying disclosure, the court found dispositive that the panel report was not a final agency determination or policy but rather, amounted to "predecisional material, prepared to assist an agency decision maker * * * in arriving at his decision" (p 1048). The fact that the panel's recommendations and reasoning were not binding was found to be of critical significance. Similarly, in *Marshall,* the Appellate Division, Fourth Department, relying upon *McAulay,* denied access to a copy of a report of the screening committee that (p 798) "gave rise to the charges" against appellant, a psychiatrist who had been served with a statement charging him with professional misconduct.

In *Matter of Sea Crest Constr. Corp. v Stubing (supra)* petitioner commenced an article 78 proceeding to compel disclosure of correspondence between the Town of North

Hempstead and the architects and engineers retained for consultation and advice in connection with a construction project. Following an *in camera* inspection, the Second Department found the requested documents to be exempt as intra-agency material (Public Officers Law, § 87, subd 2, par [g]). In discussing the underlying purpose of the exemption in relation to governmental operation, the court relied upon the need to protect the deliberative process so as to ensure the uninhibited right and need of the agency to rely upon opinions and recommendations not only of its own employees, but also of temporary consultants since "efficient government operation requires open discussions among all government policy makers and advisors, whether those giving advice are officially part of the agency or are solicited to give advice only for specific projects" (82 AD2d, at p 549).

The same policy and legal considerations in this case require a finding exempting the memorandum sought herein from disclosure. The memorandum, dated and prepared March 18, 1982, contains an evaluation of petitioner's role and performance as the designated arbitrator and was used by respondents in reaching a determination on whether petitioner should be redesignated in the new collective bargaining agreement. Clearly, the document is a predecisional report, prepared to assist the agency in reaching its decision and in formulating a policy to be followed. Other than the conclusory assertions by petitioner, there is nothing in the record to demonstrate that the memorandum is a postdecisional document or that it was prepared after the MTA had determined to replace him. Under the circumstances, confirmed by our review of the document *in camera,* we find that disclosure would subvert the deliberative process of the agency. In accordance with the underlying rationale of both the Federal and State decisions, the memorandum, as intra-agency material, is not a final agency policy or determination under the Freedom of Information Law.

We need not reach the alternate contention advanced by appellants that disclosure of the memorandum would impair present or imminent collective bargaining negotiations (Public Officers Law, § 87, subd 2, par [c]).

■ We also disagree with the broad direction contained in the judgment which required that appellants certify whether the MTA was in possession of other records or documents so that petitioner might then determine whether additional disclosure would be sought. In response to the request for production of the decision of the board, appellants stated that the MTA did not reach a formal determination on the issue of petitioner's status as the impartial arbitrator. While we appreciate that Special Term may have been motivated by the laudable purpose of possibly avoiding further requests and proceedings, the effect of the disposition was to accord to petitioner broad and unfettered disclosure, thereby circumventing the required procedure in the Freedom of Information Law. All that petitioner requested by way of disclosure was the memorandum and board determination. In connection with the determination, appellants allege, without contradiction, that no board action was taken and, therefore, there was no final action by way of a decision.

Clearly, petitioner, for the sake of disclosure, cannot compel the agency to formulate a final determination when none exists. As was succinctly observed by the Appellate Division, Second Department, in *Matter of McAulay v Board of Educ.* (*supra,* p 1048): "The Freedom of Information Law does not require an agency to develop a body of written law or policy. Nor does it permit us to substitute therefor a compilation of nonfinal recommendations which may be based upon reasoning rejected or never adopted by the ultimate decision maker, the disclosure of which might not only impinge upon the agency's predecisional processes, but affirmatively mislead the public."

Accordingly, the judgment, Supreme Court, New York County (BLYN, J.), entered October 18, 1982, which directed appellants to furnish petitioner with a certain designated MTA memorandum and to certify whether other documents and records were in existence, should be reversed, on the law, without costs, the judgment vacated, the application denied and the petition dismissed.

CARRO, J. P., SILVERMAN and FEIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on October 18, 1982, unanimously reversed, on the law,

without costs and without disbursements, the judgment vacated, the application denied and the petition dismissed.