In the Matter of JOHN R. DE ZIMM, Respondent, v WILLIAM G. CONNELIE, as Superintendent of the New York State Police, Appellant.

Third Department, July 26, 1984

APPEARANCES OF COUNSEL

*Robert Abrams, Attorney-General* (*Carl E. Stephan* and *William J. Kogan* of counsel), for appellant.

*John R. De Zimm,* respondent *pro se.*

### OPINION OF THE COURT

KANE, J.

In a letter dated December 1, 1981, petitioner requested respondent to disclose any specific rules and regulations which the State Police had concerning the procedures followed when employing electronic surveillance and monitoring devices during criminal investigations. Since petitioner was involved in a pending lawsuit against the State of New York, his letter was forwarded to the New York State Attorney-General's office for comment. Petitioner was informed of the referral in a letter dated December 11, 1981.

Petitioner responded with another letter to respondent, dated December 17, 1981, in which he asserted that his status as a litigant should have no bearing on his request for information under the Freedom of Information Law (FOIL) (Public Officers Law, art 6). Additionally, petitioner requested that, in the event that his request was denied, his letter be deemed an appeal from the denial of his previous letter dated December 1, 1981, pursuant to section 89 (subd 4, par [a]) of the Public Officers Law.

In a letter dated December 22, 1981, the assistant deputy superintendent for the State Police wrote to petitioner that his request was being denied since it involved intra-agency material and also because the material requested "is compiled for law enforcement purposes and, if disclosed, could reveal criminal investigative techniques or procedures". Petitioner was also informed that his letter of December 17, 1981 could not be considered an appeal from this ruling.

In response to this determination, petitioner wrote, in a letter dated December 28, 1981, that he was renewing his request, but in so doing was substantially narrowing its scope. Specifically, petitioner sought to discover whether the State Police had a regulation concerning an officer's duty to record conversations while wearing a monitoring device. When petitioner failed to receive a response to this third request, he sent a fourth letter dated January 12, 1982 to the State Police Committee on Appeals-Public Access to Records in which he appealed the previous denials by the State Police. In a letter dated January 20, 1982, Chief Inspector Donald Brandon of the State Police reviewed petitioner's appeal and determined that pursuant to section 87 (subd 2, par [e], cls i, iv; par [g], cls i, ii, iii) of the Public Officers Law: "The records have been compiled for law enforcement purposes and if disclosed would interfere with law enforcement investigations and would reveal criminal investigative techniques [and] are intra-agency materials not described by 87.2 (g) i, ii, iii."

Petitioner thereafter commenced this proceeding pursuant to CPLR article 78 to require respondent to grant his request for information. Petitioner argued the denial of his due process and equal protection rights and that respon-

dent's determination was arbitrary, capricious and an abuse of discretion. In answering, respondent defended the denials for the same reasons previously given, and also, because there exists no written regulation concerning electronic surveillance and FOIL does not require the creation of records not in existence.

After serving a verified response, petitioner moved at Special Term for an order compelling respondent to prepare a "Vaughn" index relating to electronic surveillance and monitoring procedures. Special Term ordered respondent to submit to the court: "for an *in camera* inspection all information, records and materials relating to the rules, regulations, authorization, restrictions and policies of electronic surveillance and monitoring by the New York State Police to determine the disclosability of such materials". Additionally, Special Term dismissed as moot the application presented at the July 16, 1982 Special Term seeking an order to compel respondent to prepare an index. After conducting an *in camera* inspection of the materials supplied pursuant to its order, Special Term ruled that article 13G of the Administrative Manual of the New York State Police (manual)* is subject to disclosure under FOIL. This appeal by respondent ensued.

Article 6 of the Public Officers Law obligates an agency to hold its records open to the public unless they fall within one of eight specific exempt categories set forth in subdivision 2 of section 87 of the Public Officers Law (see *Matter of Westchester Rockland Newspapers v Kimball,* 50 NY2d 575, 580; *Kheel v Ravitch,* 93 AD2d 422, 426, app dsmd 60 NY2d 681). Respondent contends that the requested material, specifically article 13G of the manual, is exempt from disclosure under either, or both, section 87 (subd 2, par [e], cl iv) or section 87 (subd 2, par [g], cl ii) of the Public Officers Law. The former states that an agency may deny access to records or portions thereof that:

"(e) are compiled for law enforcement purposes and which, if disclosed, would * * *

"iv. reveal criminal investigative techniques or procedures, except routine techniques and procedures".

---

* The Attorney-General has submitted a copy of article 13G for *in camera* review by this court.

Section 87 (subd 2, par [g], cl ii) provides that an agency may deny access to records or portions thereof that:

"(g) are inter-agency or intra-agency materials which are not * * *

"ii. instructions to staff that affect the public".

Turning first to the exemption contained in section 87 (subd 2, par [e], cl iv) of the Public Officers Law, we agree with respondent that it is applicable herein.

The procedures contained in article 13G of the manual are not "routine" (see *Matter of Fink v Lefkowitz,* 47 NY2d 567). Indeed, a review of article 13G itself reveals that eavesdropping is an extraordinary measure employed in limited cases only. In our opinion, revealing information concerning eavesdropping techniques could allow miscreants to tailor their activities to evade detection. In particular, section 13G2 of article 13G of the manual discusses special restrictions placed upon the State Police in addition to those restrictions imposed by law. Thus, a person engaged in illegal activity with knowledge of these special restrictions would be alert for the techniques used in possible eavesdropping situations. In addition, section 13G11 mentions by trade name various devices used and section 13G9 contains a detailed procedure concerning the use of "slave or lease lines". As the Court of Appeals observed in *Matter of Fink v Lefkowitz (supra,* p 572): "However beneficial its thrust, the purpose of the Freedom of Information Law is not to enable persons to use agency records to frustrate pending or threatened investigations nor to use that information to construct a defense to impede a prosecution." Accordingly, we conclude that section 87 (subd 2, par [e], cl iv) of the Public Officers Law is applicable herein and exempts article 13G of the manual from disclosure. Special Term's judgment should, therefore, be reversed, and the petition dismissed.

Having reached the above conclusion, it is unnecessary to reach respondent's remaining contention concerning the applicability of section 87 (subd 2, par [g], cl ii) of the Public Officers Law.

YESAWICH, JR., J. (concurring in part and dissenting in part). I agree that the petition, insofar as it seeks to enforce

respondent to prepare a "Vaughn" index, should be dismissed as moot. However, examination of article 13G of the Administrative Manual of the New York State Police leads me to conclude that, with some modest pruning, disclosure of this article pursuant to the Freedom of Information Law (FOIL) is warranted. Construed narrowly, as they must be (*Matter of Fink v Lefkowitz,* 47 NY2d 567, 571), none of the exemptions to revelation contained in subdivision 2 of section 87 of the Public Officers Law immunize article 13G *in toto* from public scrutiny. For the most part, the article recites administrative procedures to be followed to ensure the lawfulness of the use of an electronic surveillance device availed of, or sought to be employed, by the police during a criminal investigation. The investigative techniques available to the authorities are not compiled or illustrated in any way, nor is the manner of implementing them. Nevertheless, since sections 13G9 and 13G11 of the administrative manual include information describing nonroutine procedures which theoretically could aid a suspect in evading detection, the contents of those sections need not be bared.

Nor am I persuaded by respondent's assertion that nondisclosure is dictated because article 13G represents intra-agency material, namely instructions to the staff that do not concern the public (Public Officers Law, § 87, subd 2, par [g], cl ii). Electronic surveillance by its very nature affects the public and such activity "should be monitored not only by the courts, but to an extent, by the public as well" (*Ferri v Bell,* 645 F2d 1213, 1224-1225). Given that FOIL creates a presumption in favor of disclosure, with the deletion of sections 13G9 and 13G11, article 13G of the administrative manual should be made accessible.

MAHONEY, P. J., LEVINE and HARVEY, JJ., concur with KANE, J.; YESAWICH, JR., J., concurs in part and dissents in part in an opinion.

Judgment reversed, on the law, without costs, and petition dismissed.