Matter of Lane v Port Wash. Police Dist. (2023 NY Slip Op 05605)

Matter of Lane v Port Wash. Police Dist.

2023 NY Slip Op 05605

Decided on November 8, 2023

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on November 8, 2023
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

COLLEEN D. DUFFY, J.P.
LARA J. GENOVESI
DEBORAH A. DOWLING
HELEN VOUTSINAS, JJ.

2021-07546
 (Index No. 604619/21)

[*1]In the Matter of Charles Lane, appellant,
v
Port Washington Police District, et al., respondents.

Cory H. Morris, Melville, NY (Victor John Yannacone, Jr., of counsel), for appellant.
Bond, Schoeneck & King, PLLC, Garden City, NY (Richard S. Finkel and Jacqueline A. Giordano of counsel), for respondents.

DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to compel the production of certain records pursuant to the Freedom of Information Law (Public Officers Law art 6), the petitioner appeals from a judgment of the Supreme Court, Nassau County (R. Bruce Cozzens, Jr., J.), dated October 4, 2021. The judgment denied the petition and, in effect, dismissed the proceeding.
ORDERED that the judgment is modified, on the law, (1) by deleting the provision thereof denying that branch of the petition which was to compel the production of records sought in the petitioner's Freedom of Information Law request lettered "(a)" and, in effect, dismissing that portion of the proceeding, and substituting therefor a provision granting that branch of the petition, (2) by deleting the provision thereof denying that branch of the petition which was to compel the production of records sought in the petitioner's Freedom of Information Law request lettered "(e)" and, in effect, dismissing that portion of the proceeding, and substituting therefor a provision granting that branch of the petition to the extent that the respondent Port Washington Police District is directed to produce the records requested in an unredacted form for an in camera inspection by the Supreme Court, Nassau County, and (3) by deleting the provision thereof denying that branch of the petition which was for an award of attorney's fees related to the petitioner's Freedom of Information Law request lettered "(e)" and, in effect, dismissing that portion of the proceeding; as so modified, the judgment is affirmed, without costs or disbursements, and the matter is remitted to the Supreme
Court, Nassau County, for a new determination of those branches of the petition which were to compel the production of records sought in the petitioner's Freedom of Information Law request lettered "(e)" and for an award of attorney's fees related to the petitioner's Freedom of Information Law request lettered "(e)" based upon the in camera inspection.
In November 2020, the petitioner requested the production of certain records from the Port Washington Police District (hereinafter the Police District) pursuant to the Freedom of Information Law (Public Officers Law art 6 [hereinafter FOIL]). The requests were lettered "(a)" through "(i)." The records the petitioner sought pertained to the Police District's use of license plate readers (hereinafter LPRs). The Police District granted certain of the requests, but denied the requests lettered (a), (d), and (e). Those requests sought: "(a) Any record indicating the number and location of the [Police District]'s Automatic License Plate Readers (LPRs) on 11/26/2020," "(d) Any rules promulgated for the use of LPRs," and "(e) For the last five years, any alerts, emails, or [*2]correspondence sent to other law enforcement agencies sharing information derived from the [Police District]'s LPRs." The Police District denied those requests on the ground that disclosure would interfere with or reveal law enforcement techniques, and cited to Public Officers Law § 87(2)(e).
The petitioner administratively appealed. The Police District granted the appeal insofar as it related to the request lettered (d), but stated that no such records existed. The Police District denied the appeal insofar as it related to the request lettered (a) on the following grounds: "Disclosing the requested information would divulge the scope of the protection that the LPRs afford District residents and would permit an accurate assessment to be made regarding the capabilities and limitations of the District's LPR system, as well as the limitations that affect the District's ability to utilize LPRs as part of its overall public safety and criminal law enforcement techniques. The disclosure . . . would also interfere with or reveal non-routine law enforcement techniques that would permit circumvention and evasion of the LPR system, which could result in the endangerment of District residents." The Police District also denied the appeal insofar as it related to the request lettered (e), stating that the appeal was denied "for the same reasons set forth above" and on the additional ground that "disclosure of documents that reveal the personal information of third parties constitutes an invasion of personal privacy."
The petitioner commenced this CPLR article 78 proceeding, inter alia, to compel the disclosure of the subject records. In a judgment dated October 4, 2021, the Supreme Court denied the petition and, in effect, dismissed the proceeding, finding that the objection raised pursuant to Public Officers Law § 87(2)(e) was justified because the requested disclosure would interfere with proper police activity and provide those who wished to avoid detection an avenue for such avoidance. The petitioner appeals.
"FOIL provides the public with broad 'access to the records of government'" (Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462, quoting Public Officers Law § 84; see Matter of Aron Law, PLLC v New York City Fire Dept., 191 AD3d 664, 665-666). "An agency must 'make available for public inspection and copying all records' unless it can claim a specific exemption to disclosure" (Matter of Data Tree, LLC v Romaine, 9 NY3d at 462, quoting Public Officers Law § 87[2]; see Public Officers Law § 89[3]). "[T]he exemptions are to be narrowly interpreted so that the public is granted maximum access to the records of government" (Matter of Data Tree, LLC v Romaine, 9 NY3d at 462). "FOIL is based on a presumption of access to the records" (id.). "[T]he agency seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access" (Matter of Capital Newspapers Div. of Hearst Corp. v Burns, 67 NY2d 562, 566; see Public Officers Law § 89[4][b]). If the agency fails to prove that a statutory exemption applies, FOIL "compels disclosure, not concealment" (Matter of Westchester Rockland Newspapers v Kimball, 50 NY2d 575, 580; see Matter of Data Tree, LLC v Romaine, 9 NY3d at 463). "The standard of review in a CPLR article 78 proceeding challenging an agency's denial of a FOIL request is much more stringent than the lenient standard generally applicable to CPLR article 78 review of agency actions" (Matter of Luongo v Records Access Officer, 161 AD3d 1079, 1080). A court is to presume that all records are open and it must construe the statutory exemptions narrowly (see Matter of Berger v New York City Dept. of Health & Mental Hygiene, 137 AD3d 904, 906; Matter of New York Comm. for Occupational Safety & Health v Bloomberg, 72 AD3d 153, 158).
Public Officers Law § 87(2)(e)(iv) provides that an agency may deny access to records compiled for law enforcement purposes to the extent that disclosure would "reveal criminal investigative techniques or procedures, except routine techniques and procedures." In Matter of Fink v Lefkowitz (47 NY2d 567), the Court of Appeals held that "[i]ndicative, but not necessarily dispositive, of whether investigative techniques are nonroutine is whether disclosure of those procedures would give rise to a substantial likelihood that violators could evade detection by deliberately tailoring their conduct in anticipation of avenues of inquiry to be pursued by agency personnel" (id. at 572; see Matter of Moore v Santucci, 151 AD2d 677, 679). The Court noted that ballistic and fingerprinting tests are examples of routine investigative techniques (see Matter of Fink v Lefkowitz, 47 NY2d at 573; Matter of Moore v Santucci, 151 AD2d at 679). Relying on Matter of Fink, and other cases citing to it, the respondents argue that the records requested here—the [*3]number and location of the license plate readers—would reveal nonroutine investigative techniques, and that the records are thus exempt from disclosure.
The respondents also cite to Matter of Grabell v New York City Police Dept. (139 AD3d 477). In Matter of Grabell, the petitioner filed a FOIL request seeking records relating to use by the New York City Police Department (hereinafter the NYPD) of specialized mobile X-ray vans which scan vehicles or buildings for evidence of explosives, drugs, and other materials. The Appellate Division, First Department, held that the records were exempt from disclosure under Public Officers Law § 87(2)(e)(iv) as records compiled for law enforcement purposes that would reveal nonroutine criminal investigative techniques or procedures, and under Public Officers Law § 87(2)(f) as information that could endanger the life or safety of any person (Matter of Grabell v New York City Police Dept., 139 AD3d at 478).
We find both Matter of Fink and Matter of Grabell distinguishable from this case. In Matter of Fink, the records at issue were sections of a comprehensive office manual prepared by a Special Prosecutor appointed by the Attorney General to investigate and prosecute nursing homes suspected of Medicaid fraud. The manual provided, inter alia, specific examples of time-tested techniques and procedures which had proven successful in detecting nursing home fraud, and a sample nursing home investigation featuring the audit and investigative reports that had led to a successful prosecution by the Attorney General. An attorney for several nursing homes requested a copy of the manual pursuant to FOIL. In finding that certain sections of the manual were exempt from disclosure, the Court stated that "the purpose of the Freedom of Information Law is not to enable persons to use agency records to frustrate pending or threatened investigations nor to use that information to construct a defense to impede a prosecution" (Matter of Fink v Lefkowitz, 47 NY2d at 572).
In Matter of Fink, the records pertained to techniques which were implemented and used to gather information in an actual, targeted investigation. The "technique" was one used, in each instance, during an investigation of an actual, specific defendant. Here, in contrast, the LPRs continuously track the public and gather information about all vehicles, and are not used in connection with actual, specific targeted investigations. Moreover, since apparently the Police District has no rules to govern the use of such LPRs, the risk of indiscriminate use by the Police District to target law abiding citizens and/or marginalized members of the public is high. To the extent that the LPRs might be used to detect criminal acts, since the Police District apparently has no rules for their use, similar concerns exist.
In Matter of Grabell, the petitioner, a journalist, requested four categories of materials: "(a) reports of past deployments of the [mobile X-ray] vans that are not related to any ongoing investigation; (b) policies, procedures and training materials regarding the [mobile X-ray] vans; (c) records sufficient to disclose the total number and aggregate cost of [mobile X-ray] vans purchased by or for [the New York City Police Department]; and (d) tests or reports regarding the radiation dose or other health and safety effects of the [mobile X-ray] vans" (Matter of Grabell v New York City Police Dept., 139 AD3d at 478). The Appellate Division, First Department, held that, through the submission of an affidavit of Richard Daddario, the Deputy Commissioner of Counterterrorism for the NYPD, the NYPD satisfied its burden to justify withholding the records from disclosure under both the law enforcement exemption (see Public Officers Law § 87[2][e][iv]) and the public safety exemption (see id. § 87[2][f]). Daddario averred that the mobile X-ray vans are a highly specialized and nonroutine technology used to combat terrorism in New York City, and explained that, in light of the ongoing threat of terrorism, releasing information describing the strategies, operational tactics, uses, and numbers of the mobile X-ray vans would undermine their deterrent effect, hamper the NYPD's counterterrorism operations, and increase the likelihood of another terrorist attack.
In Matter of Grabell, the First Department noted that the NYPD's specialized mobile X-ray vans used highly unique "backscatter technology" that "sends X rays that bounce back from the object and create an image" (Matter of Grabell v New York City Police Dept., 139 AD3d at 477). Further, the specialized mobile X-ray vans were used in a manner that focused on gathering [*4]information during actual investigations, with specific targets in mind. In contrast, here, the respondents have failed to show that the LPRs are being used in a nonroutine manner. Rather, the record shows that the LPRs are constantly gathering data and information on the public, indiscriminately and not in connection with any specific investigation or target in mind. Although the respondents contend that the disclosure of the locations of the LPRs would compromise the utility and effectiveness of the LPRs as a law enforcement tool, they have failed to offer any evidence that disclosing the number and location of the LPRs would reveal information of a specialized or unique technology. The LPRs are tantamount to speed or red light cameras, which also happen to gather surveillance on anyone that enters the Village of Port Washington.
The respondents also rely on New York Civ. Liberties Union v Department of Homeland Sec. (771 F Supp 2d 289 [SD NY]). For several reasons, the respondents' reliance on this case is misplaced. In New York Civ. Liberties Union, the plaintiff filed a request under the Freedom of Information Act (5 USC § 552; hereinafter FOIA), seeking documents related to the Lower Manhattan Security Initiative (hereinafter the LMSI), an initiative of the NYPD for which the NYPD received grant funding from the defendant in that case, the Department of Homeland Security (hereinafter the DHS). The LMSI was "designed to detect threats and perform pre-operational terrorist surveillance south of Canal Street in Lower Manhattan," and "combines an increased police presence with technology to accomplish its mission" (New York City Police Department, Counterterrorism, https://www.nyc.gov/site/nypd/bureaus/ investigative/counterterrorism.page [last accessed Oct. 2, 2023]).
The LMSI included, as part of a much wider counterterrorism initiative, the placement of surveillance cameras in lower Manhattan. After extensive production by the DHS and good-faith negotiations between the parties in New York Civ. Liberties Union, only portions of 18 documents remained at issue. The DHS claimed that the information withheld was exempt from disclosure pursuant to 5 USC § 552(b)(7)(E) (hereinafter exemption 7[E]), and submitted declarations from various officials of the Federal Emergency Management Agency and the National Protection and Programs Directorate averring that the redacted material fell within the stated FOIA exemptions. The redactions at issue contained 5 categories of information about the LMSI, which further illustrate the magnitude and unique nature of the program: (1) the location of cameras and license plate readers; (2) the particular types of equipment being used; (3) the timeline for implementing the LMSI, along with related goals, challenges, and milestones; (4) the number of "assets," such as buildings or other structures, protected by the LMSI; and (5) the particular assets to be protected, along with pertinent information about those assets.
The DHS asserted that nearly all of the information it had withheld from the plaintiff was properly withheld under exemption 7(E), which applies to "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law" (5 USC § 552[b][7][E]). The DHS claimed that both prongs of exemption 7(E) applied: that disclosure would reveal "'techniques and procedures for law enforcement investigations or prosecutions'" (New York Civ. Liberties Union v Dept of Homeland Security, 771 F Supp 2d at 291, quoting 5 USC § 552[b][7][E]), and that disclosure would reveal "'guidelines for law enforcement investigations or prosecutions'" and could facilitate "'circumvention of the law'" (New York Civ. Liberties Union v Dept of Homeland Security, 771 F Supp 2d at 291, quoting 5 USC § 552[b][7][E]). Importantly, the plaintiff in New York Civ. Liberties Union did not contest that the redacted material consisted of records or information compiled for law enforcement purposes, that the material contained information about techniques, procedures, and guidelines for law enforcement investigations, or that the material could be used to circumvent the law. Unlike here, that plaintiff in New York Civ. Liberties Union did not claim that the redactions or the justifications given by the declarants were made in bad faith. Rather, that plaintiff argued that the information was already known—that a response to its FOIA requests would not increase the risk of circumvention of the law because "there ha[d] been public reporting about the LMSI and other NYPD surveillance initiatives that discusse[d] exactly the types of information DHS ha[d] withheld as operational details or asset-related information" (New York Civ. [*5]Liberties Union v Dept of Homeland Security, 771 F Supp 2d at 291 [internal quotation marks omitted]). That plaintiff also claimed that the techniques used by the LMSI were "routine and generally known" (id. at 292 [internal quotation marks omitted]) because they had been the subject of various publications and because many of the cameras could be observed and located by pedestrians.
The District Court in New York Civ. Liberties Union ruled that the plaintiff had not met its burden of showing that the information sought was publicly available. The court held that the publicly available information the plaintiff proffered was not identical to the information it was seeking to obtain, and that the information withheld was far more specific than any information that the plaintiff showed to be publicly available (see id.).
The District Court noted that, although it was publicly known that the LMSI uses cameras and license plate readers, the specific locations of the devices were unknown, and their disclosure could aid criminals in evading detection and thereby circumventing the law. In the same vein, the court stated that the release of the number and name of protected assets would publicize with heightened precision the scope and breadth of the LMSI, and would identify to potential terrorists targets that have heightened security due to their significance, and that disclosure of this information could nullify the deterrent effect created by the absence of information concerning the scope of the surveillance and other security measures within lower Manhattan (see id. at 292-293).
The context and setting at issue in the District Court's decision in New York Civ. Liberties Union, to wit, the prevention of terrorist attacks in post 9/11 New York City, in conjunction with America's fight against terrorism, is vastly different than the context and setting at issue here—a general practice of the Police District of surveilling all vehicles entering and exiting Port Washington. In contrast to the LMSI, implemented under the unique circumstances of post 9/11 New York City and as part of extraordinary and detailed counterterrorism measures involving funding from and participation of federal agencies, here, the Police District articulated only the hope of obtaining information and has implemented a general surveillance program that indiscriminately gathers information about anyone entering Port Washington. That the information gathered in such manner may potentially be used to detect or apprehend a person who may be involved in criminal activity does not, in our view, render the information requested by the petitioner exempt under New York's law enforcement records exemption.
Our dissenting colleague's reliance on Matter of De Zimm v Connelie (64 NY2d 860) for the proposition that the Court of Appeals has not imposed any requirement that an investigative technique must be applied during an active investigation of a specific criminal act to be considered nonroutine, is misplaced. In that case, the records at issue did, in fact, pertain to investigative techniques used during actual investigations, as detailed in the decision of the Appellate Division, Third Department, which was affirmed by the Court of Appeals (see Matter of De Zimm v Connelie, 102 AD2d 668, affd 64 NY2d 860). The Third Department stated that the petitioner had requested disclosure of "any specific rules and regulations which the State Police had concerning the procedures followed when employing electronic surveillance and monitoring devices during criminal investigations" (id. at 668). The petitioner subsequently narrowed the request to include only those regulations concerning an officer's duty to record conversations while wearing a monitoring device (see id. at 669). Clearly, as in Matter of Fink v Lefkowitz (47 NY2d 567), the information requested in Matter of De Zimm pertained to investigative techniques used in active investigations. We also note that, unlike here, where there has been no in camera review of the disputed matter sought to be disclosed, in Matter of De Zimm there had been two in camera inspections of the disputed material—one by the Supreme Court and another by the Appellate Division.
In light of the presumption of accessability and the narrow interpretation we are required to apply to a claimed exemption, under the circumstances of this case, we find that the respondents failed to sustain their burden of proving that the law enforcement records exemption pursuant to Public Officers Law § 87(2)(e)(iv) applied to the records pertaining to the number and location of the LPRs sought by the petitioner's request lettered (a).
Pursuant to Public Officers Law § 87(2)(b), an agency "may deny access to records" where disclosure "would constitute an unwarranted invasion of personal privacy under the provisions of [Public Officers Law § 89(2)]." With regard to the petitioner's request lettered (e), which sought production of records of alerts, emails, or correspondence sent to other law enforcement agencies sharing information derived from the LPRs, the respondents contend that such records should be exempt on the additional grounds that the disclosure of the records would reveal the personal information of third parties and constitute an invasion of personal privacy, and are thus exempt pursuant to Public Officers Law § 89(2)(b). However, since the records sought are not part of the record on appeal, we cannot determine the merits of the petitioner's challenges to the respondents' reliance on the claimed exemption to withhold those records (see Matter of Lepper v Village of Babylon, 190 AD3d 738, 742; Matter of New York Times Co. v District Attorney of Kings County, 179 AD3d 115, 124-125). "If the court is unable to determine whether withheld documents fall entirely within the scope of the asserted exemption, it should conduct an in camera inspection of representative documents and order disclosure of all nonexempt, appropriately redacted material" (Matter of Gould v New York City Police Dept., 89 NY2d 267, 275; see Matter of Lepper v Village of Babylon, 190 AD3d at 743).
Since on this record we cannot determine whether the respondents met their burden of demonstrating the applicability of the exemption to the records sought in the request lettered (e), we must reinstate that branch of the petition which was to compel the production of those records, grant that branch of the petition to the extent of directing the Police District to produce those records in an unredacted form for an in camera inspection by the Supreme Court, and remit the matter to the Supreme Court, Nassau County, to conduct an in camera inspection of representative documents to determine whether any of the material in those records falls within the asserted FOIL exemption, and whether that material can be redacted, and for a new determination thereafter of that branch of the petition (see Matter of Data Tree, LLC v Romaine, 9 NY3d at 464; Matter of Lepper v Village of Babylon, 190 AD3d at 743).
"A court shall award attorney's fees and other litigation costs to a petitioner in conjunction with a FOIL request where the petitioner has substantially prevailed and the agency had no reasonable basis for denying access, and may make such an award where the petitioner has substantially prevailed" (McDevitt v Suffolk County, 183 AD3d 826, 828 [emphasis added and internal quotation marks omitted]; see Public Officers Law § 89[4][c]). Although ultimately unsuccessful, the Police District did articulate a reasonable basis for withholding the material sought in the petitioner's request lettered (a) (see Public Officers Law § 89[4][c]; Matter of Niagara Envtl. Action v City of Niagara Falls, 63 NY2d 651, 651-652; Matter of Norton v Town of Islip, 17 AD3d 468, 470).
However, since that branch of the petition which was to compel the production of records sought in the petitioner's request lettered (e) remains pending and undecided in light of our determination, "the petitioner's request for an award of attorney's fees and litigation costs is premature" with regard to that portion of the petitioner's FOIL request (Matter of Jewish Press, Inc. v New York City Dept. of Educ., 183 AD3d 731, 733; see Matter of McDevitt v Suffolk County, 183 AD3d at 828). Accordingly, we must reinstate that branch of the petition which was for an award of attorney's fees related to the petitioner's request lettered (e), and remit that branch of the petition to the Supreme Court, Nassau County, for a new determination following the court's new determination of that branch of the petition which was to compel the production of records sought in the petitioner's request lettered (e).
DUFFY, J.P., GENOVESI and VOUTSINAS, JJ., concur.
DOWLING, J., concurs in part and dissents in part, and votes to modify the judgment, on the law, (1) by deleting the provision thereof denying that branch of the petition which was to compel the production of records sought in the petitioner's request lettered (e) and, in effect, dismissing that portion of the proceeding, and substituting therefor a provision granting that branch of the petition to the extent that the Police District is directed to produce the records requested in an unredacted form for an in camera inspection by the Supreme Court, Nassau County, and (2) by [*6]deleting the provision thereof denying that branch of the petition which was for an award of attorney's fees related to the petitioner's request lettered (e) and, in effect, dismissing that portion of the proceeding; as so modified, to affirm the judgment and remit the matter to the Supreme Court, Nassau County, for a new determination of those branches of the petition based upon the in camera inspection, with the following memorandum:
I dissent from so much of the majority decision as finds that the location of automatic license plate readers (hereinafter LPRs) within the respondent Port Washington Police District (hereinafter the Police District), as requested in the petitioner's Freedom of Information Law (Public Officers Law art 6 [hereinafter FOIL]) request lettered "(a)," is not exempt from disclosure under the law enforcement exemption contained in Public Officers Law § 87(2)(e)(iv).
The premise of FOIL "'[is] that the public is vested with an inherent right to know and that official secrecy is anathematic to our form of government'" (Matter of Friedman v Rice, 30 NY3d 461, 475, quoting Matter of Fink v Lefkowitz, 47 NY2d 567, 571). "'All government records are presumptively open for public inspection unless specifically exempt from disclosure'" (Matter of Xao He Lu v Kings County Dist. Attorney, 217 AD3d 959, 959, quoting Matter of Crowe v Guccione, 171 AD3d 1170, 1171; see Matter of Friedman v Rice, 30 NY3d at 475; Matter of Karlin v McMahon, 96 NY2d 842, 843). Exemptions to disclosure "'are to be narrowly interpreted so that the public is granted maximum access to the records of government'" (Matter of Friedman v Rice, 30 NY3d at 475, quoting Matter of Data Tree, LLC v Romaine, 9 NY3d 454, 462).
Public Officers Law § 87(2)(e)(iv) provides an exemption from disclosure for documents "compiled for law enforcement purposes only to the extent that disclosure would . . . reveal criminal investigative techniques or procedures, except routine techniques and procedures" (see Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d 217, 225-226). "The purpose of this exemption is obvious. Effective law enforcement demands that violators of the law not be apprised of the nonroutine procedures by which an agency obtains its information" (Matter of Fink v Lefkowtiz, 47 NY2d 567, 572). "Indicative, but not necessarily dispositive, of whether investigative techniques are nonroutine is whether disclosure of those procedures would give rise to a substantial likelihood that violators could evade detection by deliberately tailoring their conduct in anticipation of avenues of inquiry to be pursued by agency personnel" (id. at 572). Put simply, "FOIL was not designed to assist wrongdoers in evading detection" (Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 226).
Here, there is no dispute that LPRs are an investigative technique used for law enforcement purposes. However, in my view, this is a nonroutine technique such that the location of LPRs is not subject to disclosure (see Public Officers Law § 87[2][e][iv]). The record reveals that LPRs are devices which use high-speed cameras to photograph the license plates of vehicles that pass within their field of view, as well as software to analyze those photographs in order to identify license plate numbers. The cameras used can be placed nearly anywhere, such as mounted on police vehicles or fixed to poles or traffic lights. The license plate data is then converted into readable text and compared to various databases, including lists of persons subject to a felony arrest warrant or "AMBER alerts," and law enforcement is notified when a match or hit occurs. The information obtained, which consists of the photograph, license plate number, date, time, and location, can also be pooled and stored for other investigative uses, including tracing past movements of suspects or missing persons. The record discloses that the Police District in fact uses LPRs to locate stolen vehicles and wanted persons, among other things, and has successfully apprehended law breakers through its use of this technique. Thus, although LPRs indiscriminately gather information with respect to all vehicles which pass by, the information obtained is used by the Police District to identify and locate criminals or individuals of interest. Revealing the location of such devices would certainly reduce their effectiveness, since persons engaged in criminal activity could use knowledge of their whereabouts to elude apprehension (see Matter of Fink v Lefkowtiz, 47 NY2d at 572; Matter of De Zimm v Connelie, 64 NY2d 860).
Moreover, federal courts having occasion to address this and similar issues have found these types of materials are exempt from disclosure. The Court of Appeals has recognized that [*7]"'[f]ederal case law and legislative history . . . are instructive' when interpreting Public Officers Law § 87(2)(e) because the FOIL law enforcement exemption is modeled on the federal counterpart found in the Freedom of Information Act" (Matter of Madeiros v New York State Educ. Dept., 30 NY3d 67, 76, quoting Matter of Lesher v Hynes, 19 NY3d 57, 64 [internal quotation marks omitted]; see Matter of Abdur-Rashid v New York City Police Dept., 31 NY3d at 231; Matter of Friedman v Rice, 30 NY3d 461; Matter of Fink v Lefkowitz, 47 NY2d at 572; see generally 5 USC § 552). As my colleagues in the majority acknowledge, in New York Civ. Liberties Union v Department of Homeland Sec. (771 F Supp 2d 289, 292 [SD NY]), the United States District Court for the Southern District of New York has found that disclosing the location of LPRs "could unquestionably aid criminals in evading detection and thereby circumventing the law," and that the "uncertainty" regarding the locations of the cameras used "is plausibly asserted to be a key component of their deterrent and disruptive effect" (id. at 292; see Piper v U.S. Dept. of Justice, 294 F Supp 2d 16, 31 [D DC], affd as amended 222 Fed Appx 1 [DC Cir]). Although the LPRs at issue in New York Civ. Liberties Union v Department of Homeland Sec. had been placed in and around lower Manhattan as part of a broad anti-terrorism initiative by the New York City Police Department for which it had received funding from the Department of Homeland Security, in my view, the funding justification for a technique's implementation should not determine whether it is subject to disclosure under FOIL.
The majority's conclusion that LPRs are a routine investigative tool because they collect information "indiscriminately and not in connection with any specific investigation or target" not only overlooks the Police District's use of the information obtained to locate and apprehend individuals of interest, but is led by the majority's apparent misinterpretation of the legislature's use of the term "routine" in Public Officers Law § 87(2)(e)(iv). In Matter of Fink v Lefkowitz, upon which the majority primarily relies, the respondent sought to avoid disclosure of portions of a special prosecutor's office manual which illustrated "time-tested" techniques for investigating nursing home fraud, including "factors which should alert an investigator that something is awry" (Matter of Fink v Lefkowitz, 47 NY2d at 573). The information sought had been assembled as a guide to aid the office in identifying criminal activity in the course of their overall investigation of nursing home fraud in New York State. In finding that portions of the manual were exempt from disclosure under Public Officers Law § 87(2)(e)(iv), and given that an investigation into nursing home fraud was then underway, the Court of Appeals explained that disclosure "would have a dramatic impact on law enforcement investigations by alerting prospective defendants to the course those inquiries would be likely to take" (Matter of Fink v Lefkowitz, 47 NY2d at 573). The Court did not state or imply that use of a law enforcement investigative technique must be limited to active investigations of a specific target to be considered nonroutine, and has not subsequently imposed this requirement when considering the application of Public Officers Law § 87(2)(e)(iv).
In Matter of De Zimm v Connelie (64 NY2d 860), for example, the Court of Appeals affirmed a determination of the Appellate Division, Third Department (see Matter of De Zimm v Connelie, 102 AD2d 668, affd 64 NY2d 860), that a section of the Administrative Manual of the New York State Police relating to eavesdropping techniques employed by the police was exempt from disclosure under Public Officers Law § 87(2)(e)(iv). The petitioner had sought to discover whether the State Police "had a regulation concerning an officer's duty to record conversations while wearing a monitoring device" (Matter of De Zimm v Connelie, 102 AD2d at 669). In concluding that the subject section of the manual was exempt from disclosure, the Third Department explained that "revealing information concerning eavesdropping techniques could allow miscreants to tailor their activities to evade detection" (id. at 671). The rationale for denying disclosure did not turn on whether the information contained in the manual was intended for use in connection with any specific investigation or target.
Lastly, with respect to those branches of the petition which were to compel the production of records sought in the petitioner's request lettered (e) and for an award of attorney's fees to the extent pertaining to that request, I agree with the majority's conclusions that remittal is required. Accordingly, I vote to modify the judgment (1) by deleting the provision thereof denying that branch of the petition which was to compel the production of records sought in the petitioner's request lettered (e) and, in effect, dismissing that portion of the proceeding, and substituting therefor [*8]a provision granting that branch of the petition to the extent that the Police District is directed to produce the records requested in an unredacted form for an in camera inspection by the Supreme Court, Nassau County, and (2) by deleting the provision thereof denying that branch of the petition which was for an award of attorney's fees related to the petitioner's request lettered (e) and, in effect, dismissing that portion of the proceeding. As so modified, I vote to affirm the judgment and remit the matter to the Supreme Court, Nassau County, for a new determination of those branches of the petition based upon the in camera inspection.
ENTER:
Darrell M. Joseph
Acting Clerk of the Court